Filed 2/28/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RHONDA PERSIANI,<br><br>     Petitioner,<br><br>          v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>     Respondent,<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | G062648<br><br>(Super. Ct. Nos. 30-2022-01278408, 21HM06672, 20HM02654, 19HM02553, 19HM11594)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Julian W. Bailey, Judge. Petition denied and matter remanded with directions.

Martin F. Schwarz, Public Defender, Laura Jose, Chief Deputy Public Defender, and Adam Vining, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

Todd Spitzer, District Attorney, and Austin Deuel, Deputy District Attorney, for Real Party in Interest.

We hold a trial court has authority under Penal Code section 1370.01, subdivision (b)(1)(A) to order treatment through mental health diversion for a mentally incompetent misdemeanor defendant charged with driving under the influence.[1] Here, petitioner Rhonda Persiani was charged in four misdemeanor cases with driving under the influence (Veh. Code § 23152, subd. (a)). While the charges were pending, a doubt arose as to Persiani's mental competence, criminal proceedings were suspended, and Persiani was found incompetent to stand trial.

Pursuant to section 1370.01, Persiani was evaluated and found suitable for outpatient treatment through mental health diversion. However, the court and the parties ultimately concluded Persiani was ineligible for such treatment because Vehicle Code section 23640 prohibits diversion in cases where a defendant is charged with driving under the influence. She sought dismissal of her four cases, arguing dismissal was required under section 1370.01, subdivision (b)(2), because she was ineligible for any of the treatment options in subdivision (b)(1)(D) of the statute. The court denied Persiani's motion to dismiss. Instead, to provide Persiani with needed mental health treatment, the court imposed as conditions of Persiani's release certain provisions of a treatment plan the Orange County Health Care Agency recommended for Persiani.

In the instant writ petition, Persiani argues the respondent court erred in its application of section 1370.01. She asserts the court exceeded its authority by imposing mental health treatment provisions as conditions of her release. She requests we issue a writ directing the respondent court to dismiss her four cases or, alternatively, to relieve her of any conditions of release and not set further court dates in those cases. At oral argument before this court, she urged dismissal of her cases due to the length of time she has been subject to the treatment plan as conditions of her release.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

Because the record shows the court misunderstood its authority under section 1370.01 and does not show the length of time Persiani was required to comply with the court-ordered treatment plan, we deny the petition and remand the matter for further proceedings. The respondent court is directed to hold a hearing to determine whether to order Persiani be provided mental health diversion treatment under section 1370.01, subdivision (b)(1)(A), and if so, the length of such treatment.

FACTUAL AND PROCEDURAL BACKGROUND

Between February 2019 and July 2021, Persiani was charged with driving under the influence in four different misdemeanor cases. In case No. 19HM02553, she was charged with committing the following offenses on February 12, 2019: driving under the influence (Veh. Code, § 23152, subd. (a); count 1), driving with a blood alcohol level of 0.08 percent or more (Veh. Code, § 23152, subd. (b); count 2), and resisting a peace officer (Pen. Code, § 148, subd. (a)(1); count 3). In case No. 19HM11594, the prosecution alleged Persiani drove on September 5, 2019, while under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 1) and with a blood alcohol content of .08 percent or more (Veh. Code, § 23152, subd. (b); count 2). In case No. 20HM02654, the prosecution alleged Persiani drove on March 10, 2020, while under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 1) and drove with a suspended or revoked license (Veh. Code, § 14601.2, subd. (a); count 2). In case No. 21HM06672, Persiani was charged with committing the following offenses on July 26, 2021: driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 1), resisting a peace officer (Pen. Code, § 148, subd. (a)(1); count 2), and driving on a suspended or revoked license (Veh. Code, § 14601.5, subd. (a); count 3). In each case, Persiani was released after posting a bond.

In August 2021, Persiani's trial counsel expressed a doubt as to her mental competence. The court suspended criminal proceedings (§ 1368) and appointed two

psychologists to evaluate Persiani and assess her competence to stand trial (§ 1369, subd. (a)(1)). Both psychologists concluded Persiani was not competent to stand trial. At Persiani's competency hearing in February 2022, the parties submitted on the psychologists' reports. The court found Persiani was mentally incompetent under section 1367, subdivision (a) and referred the matter to the Orange County Mental Health Department to conduct "a placement report."

Dr. Nicole Caceres from the Orange County Health Care Agency Conditional Release Program (CONREP) evaluated Persiani. In a report filed with the court on April 6, 2022, Caceres found Persiani was an appropriate candidate for outpatient treatment through mental health diversion.

At a hearing about a week later, Persiani's counsel moved for dismissal of all four of Persiani's cases. Her counsel stated it had been "brought to [their] attention that mental health diversion is generally not considered applicable to driving under the influence cases." Persiani's counsel asserted dismissal was the only option under section 1370.01 because Persiani was ineligible for mental health diversion given her charges of driving under the influence and she did not meet the criteria for the other options of assisted outpatient treatment and conservatorship. The court expressed uncertainty as to whether individuals like Persiani, who had been charged with driving under the influence and found mentally incompetent, could be excluded from mental health diversion, given the dictates of section 1370.01. Over the defense's objection, the court reappointed one of the psychologists who originally concluded Persiani was incompetent and the court ordered Persiani be evaluated for borderline personality disorder, so the court could

4

consider whether to grant or deny mental health diversion as directed by section 1370.01.[2]

The court also exonerated the bonds in Persiani's cases and released her on her own recognizance (OR release) on the conditions she only drive with a valid driver's license, she not consume alcohol, and she be fitted with a Secure Continuous Remote Alcohol Monitor (SCRAM) device. Persiani's counsel objected to the court requiring a SCRAM device as a condition of release. About two weeks later, the court removed the SCRAM requirement.

At a hearing on May 4, 2022, Persiani's counsel requested the court dismiss Persiani's four cases. At the prosecution's request, the court referred the matter to the collaborative court so Persiani could be evaluated for assisted outpatient treatment. After the evaluation was performed, the collaborative court concluded Persiani's cases were not suitable for the collaborative court.

Her cases were sent back to the referring court, where a hearing was held on June 1, 2022. Her counsel reiterated the argument her cases must be dismissed because she did not qualify for mental health diversion based on her charges and she did not qualify for assisted outpatient treatment or a conservatorship. At the prosecution's request and over the defense's objection, the court continued the matter for a hearing at which the prosecution could present evidence concerning a modified treatment plan for Persiani. Persiani remained on OR release on the condition she "not drive."

About a week after the hearing, Persiani's counsel filed a motion to dismiss, asserting the court was required under section 1370.01 to dismiss Persiani's four

---

[2] In evaluating Persiani's mental competence, one of the court-appointed psychologists noted the possibility Persiani had borderline personality disorder, a mental health condition specifically excluded from mental health diversion at the time under former section 1001.36. Effective January 1, 2024, borderline personality disorder was removed as an excludable mental health condition under section 1001.36. (Stats. 2023, ch. 687, § 1.1.)

5

cases. The prosecution filed a written opposition, in which it argued Persiani could pursue treatment under section 1370.01 through mental health diversion, with modifications to address her mental health and addiction issues. The prosecution asserted Persiani should be treated through mental health diversion because it was consistent with the intent of section 1370.01 and because dismissal of her cases would be a danger to society, a disservice to Persiani's need for treatment, and would lead to an absurd result.

At the prosecution's request, Caceres submitted a letter to the court, which proposed "a modified treatment plan" for Persiani. The letter noted Caceres previously opined Persiani was an appropriate candidate for mental health diversion, but she was deemed ineligible because of her charges. Caceres therefore recommended Persiani's treatment plan be modified. Caceres opined Persiani's mental health had deteriorated since her arrest and recommended, "[g]iven the severity of her mental health symptoms at this time," Persiani "be seen by a psychiatric provider as soon as possible in order to prevent further decompensation." The letter contained specific recommendations regarding Persiani's treatment plan.

At a hearing on June 29, 2022, the court denied the defense motion to dismiss. The court stated it did not believe the Legislature in enacting section 1370.01, "would have considered it appropriate to take a set of persons who had committed seriously dangerous misdemeanors, and in this case four of them, and simply because of their incompetence preclude the court from fashioning a treatment plan that could hopefully address the issues that brought the person before the court." The court decided it had the inherent authority to make orders concerning the conditions of Persiani's OR release to protect public safety and to provide mental health treatment to Persiani. Using Caceres's recommended modified treatment plan, the court imposed on Persiani's OR release several conditions concerning mental health and substance abuse treatment.

6

In August 2022, the appellate division denied Persiani's petition for a writ of habeas corpus. In April 2023, the appellate division denied her petition for a writ of mandate.

Persiani filed a petition for a writ of mandate/prohibition in this court, which we summarily denied. Persiani petitioned for review in the California Supreme Court.[3] The Supreme Court granted review and transferred the matter back to us with directions to vacate our order denying mandate and to instead issue an order directing the superior court to show cause why the relief sought in the petition should not be granted. (Cal. Rules of Court, rule 8.528(d).) We issued an order to show cause, the People filed a return, and Persiani filed a reply.

## DISCUSSION

A significant juncture in the proceedings below was when the court and the parties concluded mental health diversion treatment as provided for in section 1370.01, subdivision (b)(1)(A) was unavailable to Persiani because she was charged with driving under the influence. Based on this conclusion, the court took the path of determining what other mental health treatment options were appropriate for Persiani, ultimately imposing mental health treatment conditions as terms of her OR release. We conclude the court veered unnecessarily because a mentally incompetent misdemeanor defendant, like Persiani, may be granted mental health diversion treatment as provided by section 1370.01, notwithstanding the charge of driving under the influence. We reach this conclusion after examining the statutory framework concerning mentally incompetent misdemeanor defendants, including section 1370.01's language and legislative intent. We conclude Vehicle Code section 23640 does not interfere with a court's ability to order

---

[3] Persiani's briefing in the Supreme Court suggests her compliance with the treatment plan was paused pending review in the appellate courts.

mental health diversion treatment after a court has found a misdemeanor defendant mentally incompetent to stand trial and suspended criminal proceedings.

## A. *Principles of Statutory Construction*

"'""""When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'"""" [Citation.] The interpretation of a statute presents a question of law that this court reviews de novo.'" (*People v. Braden* (2023) 14 Cal.5th 791, 804.)

## B. *Statutory Framework Concerning Defendants Who Are Mentally Incompetent to Stand Trial*

The federal and state guarantees of due process forbid a court from trying, convicting, or punishing a criminal defendant who is mentally incompetent to stand trial. (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 7, 15; *People v. Rodas* (2018) 6 Cal.5th 219, 230.) This principle is codified in section 1367. (*People v. Rodas, supra*, 6 Cal.5th at p. 230.) Section 1367 qualifies a person as mentally incompetent to stand trial "if, as a result of a mental disorder or developmental disability, the defendant is

8

unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a); accord, *Cooper v. Oklahoma* (1996) 517 U.S. 348, 354 [federal test for incompetence].)

During the criminal proceedings, if "a doubt arises in the mind of the judge as to the mental competence of the defendant" (§ 1368, subd. (a)) and defense counsel concurs (*id.*, subd. (b)), the court must order a hearing to determine the defendant's present mental competence (*id.*, subds. (b), (c)). When the court commences competency proceedings, criminal proceedings must be suspended until there is a formal determination of the defendant's mental competence. (*Id.*, subd. (c); *People v. Rodas, supra*, 6 Cal.5th at p. 231.) The procedures for the competency hearing are set forth in section 1369. If the defendant is found mentally competent, criminal proceedings resume. (§§ 1370, subd. (a)(1)(A), 1370.01, subd. (a).)

However, if the defendant is found mentally incompetent, the severity of the defendant's charges — whether the defendant is charged with a felony or misdemeanor — determines whether section 1370 or section 1370.01 applies. (§ 1367, subd. (b).) If the defendant is charged with a felony or alleged to have violated the terms of felony probation or mandatory supervision, section 1370 applies. (§ 1367, subd. (b).) Under section 1370, a felony defendant found mentally incompetent to stand trial is committed to the State Department of State Hospitals or other treatment facility or placed on outpatient status for treatment to regain competency. (§ 1370, subd. (a)(1)(B)(i).) This provides a path to mental competence through treatment, and once the court finds the defendant's competence has been restored, criminal proceedings resume. (§§ 1370, subd. (a)(1)(C), 1372.) Instead of committing a felony defendant to a public or private treatment facility, the court may grant the defendant treatment through mental health diversion if the court finds the defendant is an appropriate candidate and the defendant is found eligible for diversion under section 1001.36. (§ 1370, subd. (a)(1)(B)(v).)

9

Section 1370.01 applies when the defendant has been charged with one or more misdemeanors or a violation of misdemeanor probation and the court finds the defendant may be incompetent to stand trial because of a mental health disorder. (§ 1367, subd. (b); *Fresno County Public Guardian v. Superior Court* (2022) 81 Cal.App.5th Supp. 1, 5.)  We focus on section 1370.01 because Persiani was charged with misdemeanor offenses before she was found mentally incompetent to stand trial.

Senate Bill No. 317 (2021–2022 Reg. Sess.) (Senate Bill 317) repealed former section 1370.01 effective December 31, 2021 and enacted its replacement effective January 1, 2022.  (Stats. 2021, ch. 599, §§ 1, 2.)  When a defendant was found mentally incompetent, the former statute required the court to suspend criminal proceedings until the defendant became mentally competent.  (Former § 1370.01, subd. (a)(1).)  Like section 1370, former section 1370.01 provided a path to restore the defendant's mental competence through treatment at a public or private facility or on outpatient status.  (Former § 1370.01, subd. (a)(1)(A).)  Once competence was restored, criminal proceedings resumed.  (*Id*., subd. (a)(1)(B); § 1372.)

Under the former statute, if the court found the defendant was an appropriate candidate for mental health diversion and the defendant was eligible under section 1001.36, the court could grant mental health diversion for a period not to exceed one year.  At the end of the period of diversion, the defendant was no longer deemed incompetent to stand trial and the charges were dismissed.  (Former § 1370.01, subd. (a)(2).)  If the court did not grant mental health diversion, the court could, after an evaluation was conducted, order the defendant be confined in a treatment facility or placed on outpatient status (*id*, subd. (a)(3)(A)) and order the involuntary administration of antipsychotic medication to the defendant as prescribed by the defendant's treating psychiatrist (*id*., subd. (a)(3)(B)(ii)-(iii)).

A "'treatment facility'" included a county jail and the jail could be "designated to provide medically approved medication to defendants found to be

10

mentally incompetent and unable to provide informed consent due to a mental disorder." (Former § 1369.1, subd. (a).) Thus, under former section 1370.01, a misdemeanor defendant found mentally incompetent to stand trial could be committed to county jail for up to one year for treatment and involuntarily medicated during this commitment.

When a defendant was placed in a treatment facility or on outpatient status, regular reports were required to be filed with the court concerning the defendant's progress toward resumption of mental competence. (Former § 1370.01, subd. (b).) If it was reported "there was no substantial likelihood" the defendant would "regain mental competence in the foreseeable future," the court was required to order the defendant returned to court and to determine whether to initiate conservatorship proceedings. (*Ibid*.; *id*., subd. (c).)

Senate Bill 317 replaced former section 1370.01 with a new statute, effective January 1, 2022. (Stats. 2021, ch. 599, §§ 1, 2.) The bill's author explained the need for the legislation: "'Existing law does not provide incompetent defendants adequate mental health treatment when the defendant is charged with a misdemeanor. These defendants often spend most, if not all, of their pre-trial detention waiting for a treatment bed. [¶] . . . [¶] SB 317 provides pathways to appropriate mental health treatment for defendants charged with misdemeanors.'" (Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 317 (2021–2022 Reg. Sess.) as amended Sept. 1, 2021, pp. 1–2.) The new legislation did "not contemplate restoration of competency or a resumption of criminal proceedings." (Assem. Com. on Pub. Saf., Rep. on Sen. Bill No. 317 (2021–2022 Reg. Sess.) as amended June 23, 2021, p. 8.) The objective, instead, was mental health treatment. (*Ibid*.) Thus, Senate Bill 317 repealed the provisions regarding resumption of criminal proceedings upon restoration of mental competence for a person charged with a misdemeanor or a violation of misdemeanor probation. It also eliminated referrals to custodial treatment for incompetent misdemeanor defendants, including provisions concerning the administration of antipsychotic medication. (Legis.

11

Counsel's Dig., Sen. Bill No. 317 (2021–2022 Reg. Sess.) 2021 Stats., ch. 599; *Fresno County Public Guardian v. Superior Court, supra*, 81 Cal.App.5th Supp. at p. 5.)

C. *Section 1370.01*

As enacted by Senate Bill 317, section 1370.01 provided in relevant part: "(b) If the defendant is found mentally incompetent, the trial, judgment, or hearing on the alleged violation shall be suspended and the court may do either of the following:

"(1) [¶] (A) Conduct a hearing, pursuant to Chapter 2.8A (commencing with Section 1001.35) of Title 6, and, if the court deems the defendant eligible, grant diversion pursuant to Section 1001.36 for a period not to exceed one year from the date the individual is accepted into diversion or the maximum term of imprisonment provided by law for the most serious offense charged in the misdemeanor complaint, whichever is shorter.

"(B) If the court opts to conduct a hearing pursuant to this paragraph, the hearing shall be held no later than 30 days after the finding of incompetence. If the hearing is delayed beyond 30 days, the court shall order the defendant to be released on their own recognizance pending the hearing.

"(C) If the defendant performs satisfactorily on diversion pursuant to this section, at the end of the period of diversion, the court shall dismiss the criminal charges that were the subject of the criminal proceedings at the time of the initial diversion.

"(D) If the court finds the defendant ineligible for diversion based on the circumstances set forth in subdivision (b) or (d) of Section 1001.36, the court may, after notice to the defendant, defense counsel, and the prosecution, hold a hearing to determine whether to do any of the following:

"(i) Order modification of the treatment plan in accordance with a recommendation from the treatment provider.

12

"(ii) Refer the defendant to assisted outpatient treatment pursuant to Section 5346 of the Welfare and Institutions Code. . . .  If the defendant is accepted into assisted outpatient treatment, the charges shall be dismissed pursuant to Section 1385.

"(iii) Refer the defendant to the county conservatorship investigator in the county of commitment for possible conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code. . . .  If the outcome of the conservatorship proceedings results in the establishment of conservatorship, the charges shall be dismissed pursuant to Section 1385.

"(2) Dismiss the charges pursuant to Section 1385.  If the criminal action is dismissed, the court shall transmit a copy of the order of dismissal to the county mental health director or the director's designee.

"(c) If the defendant is found mentally incompetent and is on a grant of probation for a misdemeanor offense, the court shall dismiss the pending revocation matter and may return the defendant to supervision.  If the revocation matter is dismissed pursuant to this subdivision, the court may modify the terms and conditions of supervision to include appropriate mental health treatment.

"(d) It is the intent of the Legislature that a defendant subject to the terms of this section receive mental health treatment in a treatment facility and not a jail. . . .  A defendant not in actual custody shall otherwise receive day for day credit against the term of diversion from the date the defendant is accepted into diversion. . . ."  (Stats. 2021, ch. 599, § 2.)

This version of section 1370.01 was in effect when Persiani was found incompetent to stand trial.  Section 1370.01 has been amended twice since Senate

13

Bill 317's enactment but these amendments do not impact our interpretation of the statute as it existed when Persiani was declared incompetent to stand trial.[4]

Under the plain language of section 1370.01, subdivision (b)(1)(A), a court has the discretion to order mental health diversion treatment pursuant to section 1001.36 for a mentally incompetent misdemeanor defendant if the court deems the defendant eligible. The language of section 1370.01 does not exclude a mentally incompetent defendant charged with misdemeanor driving under the influence from receiving treatment through mental health diversion under section 1001.36. While defendants charged with certain offenses may not be placed into mental health diversion (*id.*, subd. (d)), driving under the influence is not listed as an excludable offense. Thus, nothing in the language of either section 1370.01 or section 1001.36 bars a court from exercising its discretion to provide treatment through mental health division to a mentally incompetent defendant charged with misdemeanor driving under the influence.

*D. Vehicle Code Section 23640*

Vehicle Code section 23640 was the perceived roadblock to ordering mental health diversion treatment for Persiani pursuant to section 1370.01. Thus, we examine the language of Vehicle Code section 23640 and case law addressing its application.

---

[4] First, effective January 1, 2023, section 1370.01 was amended to add a fourth option if the court found the defendant ineligible for mental health diversion; a court now has the option of referring a mentally incompetent misdemeanor defendant to a Community Assistance, Recovery, and Empowerment (CARE) program. If the defendant is accepted into the CARE program, the court must dismiss the charges under section 1385. (§ 1370.01, subd. (b)(1)(D)(iv) as added by Stats. 2022, ch. 735, § 3.5.) Changes were also made to section 1370.01, subdivision (b)(1)(D) to make it consistent with the eligibility criteria in section 1001.36, subdivisions (b) – (d) and (g). (Stats. 2022, ch. 735, § 3.5.) Second, the provision concerning referral to the CARE program (§ 1370.01, subd. (b)(1)(D)(iv)) was amended to clarify the time requirements for an eligibility hearing. (Stats. 2023, ch. 283, § 1, eff. Sept. 30, 2023.)

Vehicle Code section 23640, subdivision (a), provides: "In any case in which a person is charged with a violation of Section 23152 or 23153, prior to acquittal or conviction, the court shall *neither suspend nor stay the proceedings for the purpose of allowing the accused person to attend or participate*, nor shall the court consider dismissal of or entertain a motion to dismiss the proceedings because the accused person attends or participates during that suspension, in any one or more education, training, or *treatment* programs, including, but not limited to, a driver improvement program, a treatment program for persons who are habitual users of alcohol or other alcoholism program, a program designed to offer alcohol services to problem drinkers, an alcohol or drug education program, or a treatment program for persons who are habitual users of drugs or other drug-related program." (Italics added.)

Recent cases have concluded Vehicle Code section 23640 bars pretrial diversion for defendants charged with driving under the influence. (*Tan v. Appellate Division of Superior Court* (2022) 76 Cal.App.5th 130 [Veh. Code, § 23640 prohibits granting misdemeanor diversion under Pen. Code, § 1001.95 to petitioner charged with misdemeanor driving under the influence]; *Grassi v. Superior Court* (2021) 73 Cal.App.5th 283 [same]; *Moore v. Superior Court* (2020) 58 Cal.App.5th 561 [defendant charged with driving under the influence ineligible for pretrial mental health diversion under Pen. Code, § 1001.36 because of Veh. Code, § 23640]; *Tellez v. Superior Court* (2020) 56 Cal.App.5th 439 [same].) These cases, however, addressed the availability of pretrial diversion to *competent* defendants charged with driving under the influence. We are tasked with considering application of Vehicle Code section 23640 to an *incompetent misdemeanor* defendant charged with driving under the influence.

A careful reading of Vehicle Code section 23640 reveals the statute does not prohibit a court from exercising its discretion under Penal Code section 1370.01 to order treatment through mental health diversion for a mentally incompetent defendant charged with misdemeanor driving under the influence. Vehicle Code section 23640

15

prohibits a court from suspending the proceedings *for the purpose of* allowing a defendant to attend or participate in a treatment program. (*Id.*, subd. (a).) However, a court acting under Penal Code section 1370.01 suspends the criminal proceedings because the defendant is mentally incompetent to stand trial (*id.*, subd. (b)), not for the purpose of allowing the defendant to attend or participate in a pretrial diversion or treatment program. Thus, the prohibition in Vehicle Code section 23640 does not apply when a misdemeanor defendant charged with driving under the influence is found to be incompetent to stand trial.

Consideration of the legislative intent behind Vehicle Code section 23640 does not lead us to a different conclusion. Vehicle Code section 23640 and its predecessor statute have been the law in California for over 40 years. (*Moore v. Superior Court, supra*, 58 Cal.App.5th at p. 570.) "Courts have consistently observed that the Legislature's '"unambiguous intent"' in enacting Vehicle Code sections 23640 and 23600, and their predecessor statutes, was '"to prohibit pre- or postconviction stays or suspensions of proceedings to allow [driving under the influence defendants] to be diverted into a treatment program and avoid spending the statutorily mandated minimum time in confinement or paying the statutorily imposed minimum fine."'" (*Ibid.*) The legislative intent behind the restraint on pretrial diversion for defendants charged with driving under the influence was to ensure all such defendants, "without exception, shall have their guilt or innocence determined without delay or diversion." (*People v. Weatherill* (1989) 215 Cal.App.3d 1569, 1577.)

But the determination of the guilt or innocence and imposition of punishment on a mentally incompetent defendant charged with any crime is constitutionally prohibited. (*Pate v. Robinson* (1966) 383 U.S. 375, 378 ["conviction of an accused person while he is legally incompetent violates due process"].) Vehicle Code section 23640 and the legislative intent behind it must be considered with this constitutional due process guarantee in mind.

16

Under section 1370.01, treatment may be ordered through mental health diversion for a mentally incompetent misdemeanor defendant charged with driving under the influence, like any other misdemeanor defendant. The Legislature intended section 1370.01 and section 1001.36 to work in concert, and in section 1370.01, treatment pursuant to section 1001.36 is the preferred treatment option. "Section 1001.36 specifically excepts incompetent persons from the statutory requirements that they consent to diversion, waive speedy trial rights, and agree to comply with treatment. (§ 1001.36, subd. (c)(2), (3).)" (*People v. Braden, supra*, 14 Cal.5th at p. 815.) "The provisions of sections 1370 and 1370.01 authorize a court to grant mental health diversion to [incompetent] defendants without restoration of competency and reinstatement of criminal proceedings. Without this express authorization, mental health diversion would be unavailable to [incompetent] defendants due to the suspended nature of criminal cases while competency proceedings occur." (*Id.* at p. 833 (dis. opn. of Evans, J.).)

*E. The Court Misunderstood its Authority to Order Mental Health Diversion Treatment for Persiani Under Section 1370.01*

After Persiani was found incompetent to stand trial, she was evaluated by Caceres and found to be an appropriate candidate for treatment through mental health diversion. The court and the parties subsequently concluded Persiani was ineligible for treatment through mental health diversion because she was charged with driving under the influence, and the court did not order such treatment.

By the time of oral argument before this court, the prosecution's position had evolved. The prosecution now acknowledges Vehicle Code section 23640 does not bar a court from ordering a mentally incompetent misdemeanor defendant receive treatment through mental health diversion. As we have discussed *ante*, Vehicle Code section 23640 does not prevent a court from ordering a mentally incompetent

17

misdemeanor defendant charged with driving under the influence to receive treatment through mental health diversion, as authorized in Penal Code section 1370.01, subdivision (b)(1)(A), after criminal proceedings have been suspended.

Thus, we conclude the court had the authority under section 1370.01, subdivision (b)(1)(A) to order Persiani receive treatment through the structure of mental health diversion in section 1001.36. We therefore reject Persiani's contention the court was required to dismiss her charges because she was ineligible for the treatment options in section 1370.01, subdivision (b)(1).[5]

The matter is remanded and returned to the superior court so the court may determine whether to order Persiani receive mental health diversion treatment pursuant to section 1370.01, subdivision (b)(1)(A) and the length of such treatment.

---

[5] Because we conclude the court had the authority to order treatment through mental health diversion, we do not address Persiani's contention the court lacked the authority to implement "its own form of informal diversion as terms and conditions of [her] release."

### DISPOSITION

Persiani's petition for a writ of mandate/prohibition is denied. The matter is remanded with directions to the respondent superior court to hold a hearing to determine whether to grant mental health diversion treatment to Persiani pursuant to section 1370.01, subdivision (b)(1)(A).


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.